[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The issue before the court is whether to grant the defendant's motion to strike on the ground that plaintiff fails to state a cause of action under any exception to the governmental immunity doctrine?
It is found that defendant's motion to strike should be granted as to count one of plaintiff's revised complaint. CT Page 5782
This action arises from an incident that occurred on November 28, 1984 involving plaintiff's decedent, Gregory Brown, and defendants Dooling, O'Keefe, Hosey and Povinelli, police officers who are employed by the City of Milford. Plaintiff alleges the following facts.
On November 28, 1984, the Milford police and fire departments received a report that an individual at 357 Edgefield Avenue was going to kill himself with a shotgun. Defendant police officers were dispatched to that address, and, upon their arrival they encountered Gregory Brown, a minor child. Defendants interviewed Gregory Brown, conducted a search of the premises, and allegedly departed without having made any effort to protect the life of the minor child. Gregory Brown killed himself with a shotgun approximately one hour after defendant police officers had departed.
Plaintiff filed a revised complaint on June 4, 1991 alleging gross negligence and recklessness on the part of the individual police officers (count one), and negligent performance of their official police duties pursuant to General Statutes 46b-120, 46b-149
and 53-21 (count two). Plaintiff also seeks recovery from the City of Milford under the doctrine of respondeat superior (count three), and further alleges negligence against the city for its failure to implement and execute its emergency services, promulgate rules and regulations concerning adolescent suicide, and for neglecting to train and educate defendants and other emergency personnel (count four).
Defendants filed a motion to strike on September 13, 1991, seeking to strike plaintiff's revised complaint in its entirety; plaintiff filed a timely memorandum in opposition, and oral argument was heard by the court.
The motion to strike tests the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); Practice Book 152. When ruling on a motion to strike, the court is restricted to the facts alleged in the complaint, Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988), and the court must construe those facts in the light most favorable to the nonmoving party. Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988). If the facts provable under the pleadings would support a defense or a cause of action, the motion to strike must fail. Mingachos v. C.B.S., Inc., 196 Conn. 91, 109,491 A.2d 368 (1985).
In their motion to strike, defendants argue that the allegations in count one fail to state a cause of action for willful and wanton misconduct. Defendants maintain that since CT Page 5783 plaintiff fails to state a cause of action for willful and wanton misconduct, plaintiff's claim is limited to defendants' alleged negligent performance of an official duty, and such claimed is barred by the doctrine of governmental immunity.
Plaintiff opposes defendants' motion solely on the basis that defendants are not entitled to governmental immunity because defendants fall under the "identifiable person/imminent harm" exception to the governmental immunity doctrine. Thus, it is noted that plaintiff apparently concedes that defendants were engaged in a discretionary act and are entitled to governmental immunity unless the "identifiable victim/imminent harm" exception applies.
Plaintiff alleges in count one that defendants were negligent in that "they conducted only a cursory search of the residence and a brief interview with Gregory Brown," and thereafter, defendants "left the area, made no report, made no effort whatever to contact the plaintiffs or any other relative, friend or acquaintance of Gregory Brown, and made no effort of any kind whatsoever to protect the life of the said Gregory Brown." (count one, para. 6).
Plaintiff maintains that defendants caused the child's death by acting "with deliberate indifference to that responsibility and duty and to the life and safety of Gregory Brown," and by "failing to undertake reasonable action to protect the child or notify his parents . . . ." (Count one, para. 9).
In Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 166,544 A.2d 1185 (1988), the court provided a framework within which to analyze governmental liability. The court emphasized the distinction between public and private duties, and it observed:
 [I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages.
Id., 166, quoting Shore v. Stongington, 187 Conn. 147, 152,444 A.2d 1379 (1982).
Even after a duty has been characterized as either public or private, the issue of whether an act was ministerial or CT Page 5784 discretionary will often control "without regard to whether the duty is ascertained to be public or private." (Citation omitted). Gordon v. Bridgeport Housing Authority, supra, 170. The Gordon court also differentiated between a ministerial act and a discretionary act:
 A municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature . . . . Ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.
(Citations omitted). Id., 167-68.
"`[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act . . . ." (Citation omitted). Evon v. Andrews, 211 Conn. 501,559 A.2d 1131 (1989).
Although a municipal employee is generally entitled to immunity from liability for the performance of discretionary acts, there are three exceptions wherein liability may attach.
 [F]irst, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.
(Citations omitted). Id, 505.
The issue of governmental immunity may be decided as a matter of law on a motion to strike. Gordon v. Bridgeport Housing Authority, supra, 170. The Gordon court further concluded that "the general deployment of police officers is a discretionary governmental action as a matter of law." Id., 180. In the instant action, the plaintiff alleges that defendant police officers were dispatched in response to a telephonic report of an impending CT Page 5785 suicide. Accordingly, when defendants responded to the suicide report, they were performing a discretionary governmental act, and they are entitled to immunity unless one of the three exceptions delineated in Evon v. Andrews applies.
As indicated supra, the first Evon exception to governmental immunity provides that immunity attaches to the discretionary act of a municipal employee unless it is evident to the employee unless it is evident to the employee that a "failure to act would be likely to subject an identifiable person to imminent harm." Evon v. Andrews, supra, 505 (citation omitted). However, the "`discrete person/imminent harm' exception to the general rule of governmental immunity has received very limited recognition in this state." Id., 507.
In Shore v. Stonington, supra, a police officer stopped a driver who was intoxicated, but the officer failed to arrest the driver. Subsequently, the intoxicated driver struck another vehicle and the driver of the second vehicle died as a result of injuries sustained in the collision. The trial court had granted defendant's motion for summary judgment, and, on appeal, the Connecticut Supreme Court found no error. The court observed that plaintiff had not established that during the officer's encounter with the intoxicated driver, the officer could have been aware that the driver's conduct "threatened an identifiable victim with imminent harm." Id., 154. The court emphasized that "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in out society." Id., 157. The court concluded that the public would not be served by "allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty." Id.
In Evon v. Andrews, plaintiffs sought damages for the wrongful deaths of their decedents who had been killed when a fire destroyed their apartment, alleging that "defendants had not done enough to prevent the occurrence of a fire." Id., 507-08. The court refused to accept the proposition that plaintiffs' decedents were either readily identifiable victims or subject to imminent harm. The court emphasized that:
 Furthermore, the plaintiffs' decedents were not subject to `imminent harm.' This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See Sestito v. Gordon, supra. The present allegations do not even rise to the level of the imminence we rejected in Shore v. CT Page 5786 Stonington, supra, in which a police officer permitted a drunk driver to continue on his way, resulting in the death of plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm.
Evon v. Andrews, supra, 508.
In Sestito v. Groton, 178 Conn. 520, 423 A.2d 165 (1979), a police officer observed a group of men drinking and arguing in a parking lot outside a bar. The officer believed that one of the men might be armed, but the officer did not intervene until he actually heard gunshots. At that point, the officer arrested the assailant. Plaintiff's complaint alleged that the officer "was aware of a disturbance of some proportions and did not immediately attempt to stop it; not did he try to intervene when the opportunity to do so existed." Id., 526. In addition, plaintiff's first count had alleged liability premised on General Statutes 7-108 and 7-465. Section 7-108 expressly provides a cause of action against an official or a municipality for failure to enforce certain laws, including laws designed to prevent disturbances of the peace by riotous assemblies. The Sestito court found that the facts were sufficient to send the question of the officer's liability to the jury.
It is clear that when the court construes the revised complaint in the light most favorable to the plaintiff, the allegations do sufficiently identify decedent as an "identifiable person" — distinct from the public at large. However, it is further noted that plaintiff has not sufficiently alleged facts to establish that Gregory Brown was subject to "imminent harm" at the time of his encounter with defendant police officers.
The revised complaint merely alleges that defendants responded to an anonymous report of an impending suicide, and that "they conducted a cursory search of the residence and brief interview with Gregory Brown," and it further alleges that defendants "left the area, made no report, made no effort whatever to contact the plaintiffs or any other relative, friend or acquaintance of Gregory Brown." (Count one, para. 6). It is clear that these assertions do not allege that defendants refused to intervene at the appropriate time, but, rather, that when defendants did intervene, their response was inadequate.
Plaintiff also fails to allege facts establish that decedent CT Page 5787 was upset or emotionally unstable during the course of defendants' investigation, or that he behaved in such a way that defendants should have been aware that decedent was subject to "imminent harm". The gravamen of plaintiff's allegations here, similar to plaintiff's allegations in Evon v. Andrews, is that defendants simply did not do enough to prevent a tragic occurrence. However, as the Evon court observed, "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future." Evon v. Andrews, supra, 508. Similarly, it is noted that the risk of Gregory Brown's death also implicated a wide range of factors that could have occurred at some time in the future — or not at all.
It is clear that a finding, on the facts alleged in the plaintiff's revised complaint, that plaintiff's decedent was in danger of imminent harm would be utilizing "the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty." Shore v. Stonington, supra, 157.
Plaintiff further alleges "by undertaking to investigate the said matter and to speak with Gregory Brown . . . [defendants] . . . assumed a special relationship with Gregory Brown and his parents under which they had a direct responsibility for Gregory Brown's continued life and a duty to protect said Gregory Brown from killing himself on the date in question." (count one, para. 9).
Plaintiff maintains that defendants obtained custody and control of Gregory Brown as a result of their response to the anonymous emergency call, thereby entering into a special or custodial relationship with him. In addition, plaintiff argues that liability attaches because defendants owed decedent an in loco parentis duty.
Defendants counter that this argument "is nothing more than a reiteration of the `public/private' duty distinction set forth in Shore. Of course, whether the duty is established to be public or private, no liability attaches unless the `imminent harm/identifiable person' exception applies. Accordingly, the plaintiff's claim of a `special duty', and of an in loco parentis relationship, must be viewed as further argument for the application of that exception." (Defendant's memorandum, p. 6).
In DeShaney v. Winnebago County Dept. of Social Services,489 U.S. 189, 202, 109 S.Ct. 998 (1989), the Supreme Court emphasized that "[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes." As discussed, supra, Connecticut has chosen to provide qualified immunity for municipal employees engaged in discretion acts unless one of the three exceptions apply. In light of the previous submission that defendants do not fall within the CT Page 5788 identifiable person/imminent harm exception, it is found that liability does not attach under any special relationship theory.
The second exception to governmental immunity recognized in Evon v. Andrews provides that liability may attach when a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws. Count one does not allege that the defendants had a statutory duty toward the decedent. Therefore it is found that this exception does not apply in the case at bar.
The third Evon exception provides that governmental immunity will act as a bar to liability if the alleged acts constitute more than mere negligence, and rise to the level of malice, wanton misconduct, or intent to injure. Count one of the revised complaint asserts that defendants acted in a manner that was "grossly negligent and reckless, and with deliberate indifference to Gregory Brown." (count one, para. 6).
"Causes of action for negligence and for `wilful and malicious conduct' are separate and distinct causes of action." Warner v. Leslie-Elliott Constructors, Inc., 194 Conn. 129, 138, 479 A.2d 231
(1984). "There is a substantial difference between negligence and wilful or malicious conduct, and a complaint should employ language explicit enough to inform the court and opposing counsel clearly that wilful or malicious conduct is being asserted." Id.
In addition, there is a significant difference between negligence and reckless misconduct. Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39, 45, 492 A.2d 219 (1985). Recklessness is "`more than negligence, more than gross negligence.'" (Citations omitted). Id., 45-46. Recklessness "`requires a conscious choice of course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man,'" and defendant "`must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.'" (Citations omitted). Id., 45. The mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton misconduct." Id., 46. (Citation omitted).
In the case at bar, it is clear that plaintiff's assertions that defendants acted in "a manner which was grossly negligent and reckless, and with deliberate indifference to the life and safety of the said Gregory Brown" are not supported by sufficient facts, and amount to conclusions of law. Accordingly, it is found that plaintiff's allegations do not rise to the level of willful and wanton misconduct. CT Page 5789
For the foregoing reasons, it is found that defendants' motion to strike should be granted.
Previously the Court granted the Motion to Strike as to Counts 2, 3 and 4.
McGRATH, J.